**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DENISE LEAL SANCHEZ, STEPHEN BURGOYNE, and THE ESTATE OF RUBIN LEAL; | § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. |
| v. | § § | 5:20-cv-618 |
| CITY OF POTEET; ERIC A. JIMINEZ, in his official capacity as City Administrator of the City of Poteet; BRUCE HICKMAN, in his official capacity as Chief of Police of the City of Poteet; WILLIAM "BILL" Lay, in his official capacity as inspector for the City of Poteet; and, BILL GAMEZ, in his official capacity as a municipal judge of the City of Poteet, | § § § § § § § § § § | Complaint for Declaratory Judgment and Injunctive Relief |
| *Defendants*. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### I.   Introduction

1.   The City of Poteet' has chosen to condemn a home during the COVID- 19 pandemic because the residents of the house occasionally use extension cords as wiring. Only this Court can prevent the City of Poteet from acting with venal disregard for the law and the lives of the Plaintiffs. By removing the Plaintiffs from their home at this time, the City of Poteet is putting Denise Leal Sanchez and Stephen Burgoyne at risk of transmission of a deadly illness. This is especially true for Mr. Burgoyne, a U.S. Navy veteran, who suffers from Chronic Obstructive Pulmonary Disorder (COPD). The City's quest to remove the Plaintiffs from their home also violates Texas law, the U.S. Constitution and the City's own COVID-19 protocols. Plaintiffs seek emergency relief from this Court to prevent serious injury and damage.

2.    The real reason the City of Poteet is seeking this bizarre and cruel action is that it wishes to punish Plaintiff Denise Leal Sanchez for practicing her God-given First Amendment Right to question the

government of the City of Poteet. For years, the City of Poteet has waged a battle with Ms. Sanchez. They have charged her with a crime for speaking her mind at council meetings. They have banned from City Hall indefinitely and without cause. They have cited her for numerous, largely frivolous, violations of municipal ordinances. And, now, they seek to demolish her home. All of this is done out of spite and the malignant desire to silence the voice of opposition to the leadership of this small town in Texas.

## II. Parties

2.      Plaintiff Denise Leal Sanchez is current city councilperson for the City of Poteet. She resides in the City of Poteet at 749 Avenue E, Poteet, Texas 78065. Plaintiff Denise Leal Sanchez is a current City Councilwoman of the City of Poteet. She is also a long time and vocal opponent of the City's practices. As a voter, taxpayer, and an occasional city official, she has fought the current City Administrator and the leaders of the City of Poteet. She has questioned the managerial decisions of Administrator Jiminez and asked difficult questions concerning the City's finances. She has demanded that the Chief of Police meet his obligations to be a licensed police officer. In short, she has demanded that the City of Poteet live up to its obligations under the law. As a punishment, the City has targeted Ms. Sanchez with selective and arbitrary enforcement of their ordinances. They have banned her from City Hall – except during Council meetings. They have sought to remove her from her own property because her home is "unsafe" even though her home is exactly in the same state of disrepair as hundreds of other homes in Poteet. Now, during the middle of a pandemic, the City seek to oust her from her home solely because she uses extension cords in her home for wiring.

3.      Plaintiff Sanchez is being injured by the Defendants in the following ways: 1) she is being removed or threatened with removal from her home during a contagious pandemic, when many other municipal matters have been stayed; 2) she has been targeted with selective, arbitrary, and punitive enforcement of City ordinances and police powers because she is vocal opponent of the leadership of the City of Poteet; and, 3) she has been banned from entering City

Hall where residents pay their utility bills and engage in other necessary municipal business, because she expressed her First Amendment right to question her government. In sum, the City has targeted Plaintiff Sanchez for impermissible purpose, to retaliate against her because of opposition to the City's policies. These actions, in total, injure Ms. Sanchez's First & Fourteenth Amendment Rights. As a consequence of the City's actions, Ms. Sanchez has suffered repeated bouts of illness and, at least, one hospitalization. She is on the verge of being removed from her home illegally. The City has threatened that her home will be demolished for minor infractions of the building codes. And, now, the City has chosen to place her health directly at risk by making her homeless during a deadly, contagious pandemic.

4.     Plaintiff Steven Burgoyne resides with Ms. Sanchez at 749 Avenue E, Poteet, Texas. Mr. Burgoyne is a disabled U.S. Veteran with Chronic Obstructive Pulmonary Disease (COPD). After previously being intermittently homeless, Mr. Burgoyne has found a safe place to live in Ms. Sanchez's home. Since Mr. Burgoyne has moved into Ms. Sanchez' home, his health has improved and he is receiving regular services from the Veterans Administration. When he moved in with Ms. Sanchez, he could not walk. Now, he is ambulatory. COPD is a chronic respiratory illness. Mr. Burgoyne is injured by the actions of the Defendants because he faces homelessness. In addition, by operation of the City's intention to hurt Ms. Sanchez he will be placed at risk of transmission of COVID-19. Because of Mr. Burgoyne's illness and other co-morbidities, if he contracts COVID-19, he faces serious injury and the prospect of death. Mr. Burgoyne would prefer to live with Ms. Sanchez, because he knows that in her home he is safe and free from manipulation and abuse.

5.     The Estate of Rubin Leal is the owner of 749 Avenue E, Poteet, Texas.

6.   Defendant the City of Poteet is a Texas general law municipality of type A. It may be served at 491 Avenue E, Austin, Texas 78701. The City of Poteet is in the Western District of Texas.

7.   Defendant Eric A. Jiminez is the City Administrator of the City of Poteet. He is being sued in his official capacity. He may be served at 491 Avenue E, Austin, Texas 78701. Mr. Jiminez resides in the Western District of Texas.

8.   Defendant Bruce Hickman is the Chief of Police of the City of Poteet. He is being sued in his official capacity. He may be served at 491 Avenue E, Austin, Texas 78701. Mr. Hickman resides in the Western District of Texas.

9.   Defendant William "Bill" Lay is an inspector and holder of various municipal offices for the City of Poteet. He is being sued in his official capacity. He may be served at 491 Avenue E, Austin, Texas 78701. Mr. Lay resides in the Western District of Texas.

10.  The Honorable Bill Gamez is a municipal judge for the City of Poteet and a defendant in this action. He is being sued in his official capacity. He may be served at 491 Avenue E, Austin, Texas 78701. Judge Gamez resides in the Western District of Texas.

**III.    Jurisdiction and Venue**

11.     Plaintiffs' complaint arises under the United States Constitution and federal statutes. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a), 1367(a) and 42 U.S.C. §§ 1983, 1988.

12. Venue is proper in the Western District of Texas. 28 U.S.C. § 1391(b)(1) as all defendants in this district.

13.  Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**IV.    Facts**

**A.  The Current Danger**

14. The Plaintiffs are in imminent danger of irreparable harm.

15.  In the afternoon of Friday May 22, 2020, the City cited Ms. Sanchez for trespassing on her own property.  A threat to remove Ms. Sanchez by force was issued along with the citation. Ms. Sanchez will be removed from her property on Tuesday May 26, 2020. When she is removed, the condemnation of her property will begin, including its demolition.

16. Mr. Burgoyne will have no place to live that safe and free from abuse should he be removed from 749 Avenue E. He has chronic respiratory disorder, which places him at high-risk for serious injury or death related to transmission of COVID-19. Should he be removed from a safe home during a pandemic, he is at risk of serious injury.

17. The Estate of Rubin Leal is at risk of having its property destroyed illegally and unconstitutionally.

18. If this Court does not issue immediate emergency relief enjoining the City from acting, irreparable harm will occur and her home will be lost. The American Dream of homeownership only means something, if property rights are respected and courts act to prevent harm.

19. The tragic part of all of this, is that it stems from Ms. Sanchez's constitutional right to question her government. The City of Poteet is only acting in this manner as retaliation and punishment for Ms. Sanchez strong dissent against the leadership of this town.

**B.  Denise Sanchez Questions the Leaders of the City of Poteet**

20. Denise Leal Sanchez is a current city councilperson of the City of Poteet.

21. Poteet is a general law city of Texas of type 4. It is comprised of a city council of 5 members with a Mayor.

22. Denise Leal Sanchez is also frequent and vocal opponent of the City of Poteet's policies and actions. Before her current term as a city councilor, she attended the City of Poteet's meetings frequently and would often question the City of Poteet on its policies. Sometimes this questioning was impertinent. Sometimes this questioning was angry. But, Ms. Sanchez's opposition and questioning of the leadership of the City of Poteet was always based on what she believed was in the best interest of voters and taxpayers of the City of Poteet. These questions are also protected by the First Amendment of the U.S. Constitution.

23. Denise's questions have often caused real embarrassment for the City of Poteet and its leaders.

24. For example, Ms. Sanchez raised doubts about the hiring of Defendant Jiminez as City Administrator because of his separation from employment as a police officer for the City of Seguin. Specifically, Seguin's Chief of Police, Keven Kelso, alleged that on the morning of September 23, 2016, Defendant Jiminez was involved in a domestic dispute with his girlfriend while he was off duty. Defendant Jiminez was allegedly intoxicated. During the dispute, Mr. Jiminez allegedly tazed his girlfriend multiple times. This alleged incident raised serious concerns about Mr. Jiminez's employment as City Administrator for the City of Poteet. Ms. Sanchez raised those concerns and asked that this issue be placed on the agenda for the City Council of the City of Poteet.

25. In addition, Ms. Sanchez raised questions about the Chief of Police, Bruce Hickman, defendant in this cause of action. As a condition of his employment as Chief of Police of Poteet,

Plaintiff Sanchez believed that Mr. Hickman was required to obtain his master peace officer's certification. This issue was placed on the council agenda, which lead to vigorous discussions and hurt feelings all around.

26. There are many more times in which Ms. Sanchez has angered the leaders of Poteet by asking questions and demanding that they live up their obligations.

27. As a result, the City of Poteet and its leaders, Defendants here, have waged a retaliatory war against Plaintiff Sanchez that has included the most recent illegal attempt to demolish her family home.

**C.  The City of Poteet Bans Sanchez from City Hall**

28.  Before her current term of office in the City of Poteet, Ms. Sanchez questioned a member of the City Staff. This questioning was allegedly done in a rude manner. Ms. Sanchez charged with a crime as a result of this altercation. Ms. Sanchez never physically threatened any member municipal staff.

29. As a consequence of her arrest, Ms. Sanchez was banned from City Hall. The City also sought prosecution of Ms. Sanchez's supposed crimes. The City alleged it had video and witnesses that would corroborate their claims that Ms. Sanchez broke the law.

30. In towns like Poteet, City Hall is not only the seat of government, but it is also the utility provider. As a consequence of the banning, Ms. Leal could not directly pay her utilities or attend to other municipal matters like obtaining permits for some home improvements.

31. After her election as a City of Poteet Councilperson, Ms. Leal was allowed to attend City Hall solely for regular council meetings. She could not go to City Hall to inspect records, discuss

matters with municipal staff, and pick up her mail or other communications. She is still effectively banned from City Hall, which has hampered her ability to fulfill her role as a public officer.

32. The City claimed it had a witness, but there was no witness. The City claimed that there was video of the altercation. But, mysteriously, the video vanished when it was requested by Ms. Sanchez's criminal defense attorney.

33. After more than a year, the pending criminal matter concerning her angry interaction with municipal staff was dismissed as having no merit.

34. Even after dismissal, Ms. Sanchez is still banned from City Hall except for council meetings. She cannot go in to City Hall to pay her utility bills. She cannot go into City Hall to obtain permits. If she goes in to City Hall during regular business hours, she is told that she will be charged with criminal trespass.

35. The City has banned Ms. Sanchez from City Hall for exercising her First Amendment Right to question her government. In addition, the City has banned Ms. Sanchez from City Hall in retaliation and punishment against Ms. Sanchez for exercising her civil liberties. This injury has occurred in the past and continues into the future.

**D.  Sham Investigation into Sanchez's Home**

36. The City of Poteet in retaliation against Ms. Sanchez began a sham investigation into the safety of Ms. Sanchez's home.

37. Ms. Sanchez resides in the home of her late father, Ruben Leal.

38. In November of 2018, the City responding to two anonymous complaints began an investigation into the home of Ms. Sanchez pursuant to the City's Unsafe and Dangerous Structure ordinance.

39. On November 21, 2018, the City of Poteet served an administrative search warrant on Ms. Sanchez to inspect her home. Pursuant to the warrant, Defendant William "Bill" Lay began his inspection of 749 Avenue E, Poteet, Texas. He found violations of the International Fire Code that in his opinion rendered the structure unsafe. His recommendation was that "the house be demolished for the safety of the occupants and the community." Video and pictures of the state of the home were taken during the investigation. These videos and pictures were published on Facebook in order to embarrass Ms. Sanchez and violate her privacy.

40. On November 26, 2018, the City served notice on Denise Sanchez that she was summoned to the Municipal Court to pull permits and come up with a plan to bring the home to code.

41. On December 4, 2020, Ms. Sanchez responded to the notice and requested a hearing. That hearing request was granted for December 18, 2018 at 2 PM.

42. At the hearing, the case was dismissed against Ms. Sanchez's property.

43. Despite this setback, the City continued on. On March 7, 2019, the City served another administrative warrant to search Ms. Sanchez's property. No notice was given to her attorney of record at that time. This attempt to re-file charges against Ms. Sanchez is barred by *res judicata* or collateral estoppel.

44. A lengthy litigation ensued in which Ms. Sanchez would remedy the most dangerous violations, including covering her water heater, clearing brush and weeds to prevent a fire

hazard, and removed part of her carport that had fallen down. The home at 749 Avenue E was safe. Despite this state of safety a hearing was set to make a final determination concerning the safety of the home for January 28, 2020. Specifically, the Court ordered Ms. Sanchez: 1) to cut the weeds and grass below 36 inches, and 2) to cease using extensions cords as permanent wiring.

45. Using extensions cords as wiring should not lead to demolishing a house or condemning the property. This is especially true when those wires are not frayed or dangerous.

46. The City gave Ms. Leal 90 days to move, relocate, or vacate her own property despite the fact that none of the final code violations that needed remedy were sufficiently dangerous to warrant the extraordinary action of destruction of private property. '

**E.  COVID-19 and the City's Order**

47. The City published its order on February 27, 2020 demanding that Ms. Sanchez leave her property by May 20, 2020. May 20 is not 90 days from the effective date of the order.

48. However, Ms. Sanchez intended to finally rectify her writing situation. She had contacted an electrician. This electrician tried to pull a permit from the City Hall of the City of Poteet, but he was denied the permit because he was not a master electrician.

49. Ms. Sanchez, then, secured a master electrician, but by then COVID-19 had forestalled any possible work that could be done on this property.

50. The Governor declared that COVID-19 was pandemic and state emergency. This emergency has radically altered Texas life, including in courts throughout Texas. On March 13, 2020, Governor Abbott declared that COVID-19 poses an imminent threat of disaster. On March

19, 2020, Dr. John W. Hellerstadt, Commissioner of the Department of State Health Services declared a state of public health disaster. Also on March 19, 2020, the Governor closed schools temporarily. On April 27, 2020, the Texas Supreme Court also issued an order that "[a]ll deadlines, whether prescribed by statute, rule, or order, that expired or would have expired between March 13, 2020, and June 1, 2020, are extended until July 15, 2020." Texas Supreme Court, "Twelfth Emergency Order Regarding the COVID-19 State of Disaster", Misc. Docket No. 20-9059, April 27, 2020.  On May 12, 2020, the Governor renewed his disaster declaration of the previous two months. In his words, "a state of disaster continues to exist in all counties due to COVID-19."

**F.  The City's Order is Illegal**

51. There is a statutory deadline associated with judicial review municipally-adopted "unsafe & dangerous structures" ordinances. In general, there is a 30 day time limit to seek review in Texas district court of a municipal court order issued pursuant to said ordinances. Tex. Local Gov't Code § 214.0012. The deadline to seek review would have expired in March 20, 2020, at the earliest.

52. However, the Texas Supreme Court has stated that any statutory deadline that occurs between March 13, 2020 and June 1, 2020 are extended until July 15, 2020. The deadline to seek judicial review has not elapsed and will not elapse until, at least, July 15, 2020.

53. The City of Poteet itself has sought to protect itself from COVID-19. In fact, the City of Poteet's municipal officers, including the Honorable Bill Gamez, Defendant in this cause, adopted a municipal court procedure, which "suspend[ed] any and all deadlines and procedures, whether prescribed by statute, rule, or order for a period of time ending no later than 30 days after the

Governor's state of disaster has been lifted." City of Poteet Municipal Court Letter, March 13, 2020.

54. The deadline to vacate in the court order is May 20, 2020. On May 12, 2020, the Governor re-issued his state disaster proclamation concluding that "a state of disaster continues to exist in all counties due to COVID-19."

55. The disaster continues and so does Poteet's suspension of court-ordered deadlines. The Court order cannot be enforced under state, municipal, or federal law.

56. Finally, all of this is of no judicial moment. The City's illegal quest to punish Denise Sanchez for her vocal opposition to its policies is barred by *res judicata*.

57. The City first sought its rights in a suit against Denise Sanchez in December of 2018, Cause No. 59186. This case was dismissed for want of a jurisdictional defect. The City did not appeal this determination.

58. The City brought the same claim alleging the same violations based on the same conduct in a subsequent matter, No. 59845.

59. The facts, complaints, parties, and allegations are identical in each proceeding. The city is barred by *res judicata* or collateral estoppel. "[A] litigant must avail [himself] of statutory remedies that may moot [his] takings claim, rather than directly institute a separate proceeding asserting such a claim." *Patel v. City of Everman,* 361 SW 3d 600, 601 (Tex. 2012).

60. Plaintiff Sanchez relied on the public pronouncements of the Governor, Texas Supreme Court and the City of Poteet.

61. However, in the abundance of caution, Ms. Sanchez filed a motion to stay execution of the municipal court before May 20, 2020. The motion cited the Governor's disaster declaration and the Texas Supreme Court executive order. The City filed a response to the motion. Ms. Sanchez replied citing the City of Poteet's adopted policy pertaining to deadlines of court orders.

62. On May 20, 2020, the Honorable Bill Gamez denied the motion to stay despite the executive orders issued by the Governor, Supreme Court and the City's own policy.

63. This denial of the stay is a clear abuse of discretion. With all due respect to Judge Gamez, the defendant is acting without adherence to judicial principles that are "amounting to a judicial usurpation of power or a clear abuse of discretion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (*en banc*).

## G.  The House is Safe and will be made Safer

64. As stated above, Ms. Sanchez has made an effort to remedy most if not all of the cited violations. The last remaining issue was the use of extension cords as permanent wiring. This may be a violation of the code, however, it is not dangerous enough to require this extraordinary remedy of nuisance abatement or essentially condemnation.

65. Regardless, as soon as it is safe to act, Ms. Sanchez has secured a master electrician to bring the home to code. Improvements will be made to make the house safer.

66. The City's dangerous desire to oust the Plaintiffs from their home is more hazardous than waiting for the home to be made safer.

## F. Poteet and its Leaders are fueled by an Impermissible purpose to harm the Plaintiffs

67. There are other homes in Poteet that are similar or more disrepair than 749 Avenue E. These homes are complained of formally and informally to the City of Poteet. These homes are not investigated or cited. These homes are not searched using administrative warrants. These homes and their owners are not cited or charged with violation of the ordinance. These homes or their owners do not live in fear of being forcibly removed from their home. Their homes will not be condemned or destroyed. They will not have a lien placed on them for destruction of their property. The Plaintiffs have been disparately treated compared to similarly situated residents and homeowners in Poteet, Texas.

68. In the alternative, the Plaintiffs are a "class of one". The City of Poteet has applied an inconsistent standard to the detriment or harm of the Plaintiffs. Application of an inconsistent standard violates the equal protection clause, even if the Plaintiffs are the only members of a class that is affected. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis.").

69. There have been numerous departures from normal operating procedure.

70. The City of Poteet used anonymous and obviously fictitious complainants to begin an investigation into the safety of the home at 749 Avenue E.

71. The City did not use the proper notice to give Plaintiffs the time to prepare their defense against the supposed code violations.

72. The City used an inspector who is not a certified inspector to formulate its opinion that the house was dangerous.

73. The City published the videos and pictures of its investigation on its official Facebook page.

74. After being dismissed, the City sought yet another investigation though that inquest was barred by *res judicata* or collateral estoppel.

75. The City sought administrative warrants multiple times based on incorrect, sworn information on affidavits.

76. In total, the City searched Plaintiffs property 4 time over the course of 9 months. There are criminals and drug houses in Poteet with fewer intrusions into their privacy than 749 Avenue E.

77. The City was made aware that there had been Adult Protective Service (APS) determination that the home was habitable and safe. In fact, there have been two APS investigation pursuant to anonymous complaints for Stephen Burgoyne's safety. None of those investigations have ever found that the home was unsafe. APS determination of habitability preempts the City's determination that home is inhabitable.

78. The City published in local papers its intent to remove Ms. Sanchez from her home several times. This was done even though the City knew that Ms. Sanchez was represented. This was done to embarrass Ms. Sanchez.

79. The City adopted COVID-19 protocols which stay any deadline of any court order and, yet, are still requiring that Ms. Sanchez move.

80. The State has issued the same suspension of court-ordered deadlines, and the City refuses to follow this directive.

81. The City has refused to allow Ms. Sanchez to pull a permit in order to stay destruction of her property. The City additionally refuse to all her electrician to pull a permit, stating that he was not a master electrician. The City allowed other people to pull a permit who were not master

electricians for similar work. In addition, the City allegedly engaged in *ex parte* communications with the municipal judge concerning these matters in the attempt to influence his decision.

81. There are other deviations from normal legal procedure including the banning her presence from City Hall based on groundless accusations. This charges were dropped and, yet, the ban still persists.

82. The City stated that it had evidence concerning Ms. Sanchez assault of City staff, but that evidence magically disappeared.

83. All in all, it is a very bizarre way to act.

84. The reason it is bizarre is that the City is poorly hiding its real purpose, to punish Ms. Sanchez for her First Amendment right to express opposition to her government. It's justifications for action are pre-textual and belie a dangerous and impermissible purpose.

**V.  Causes Action**

**Count 1- Equal Protection Clause of the 14th Amendment to the US. Constitution**

85. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

**86.** The choice by City of Poteet to remove the Plaintiffs from their home and demolish the home discriminates against plaintiffs in violation of 14th Amendment to the U.S. Constitution. In addition, the City of Poteet continues to purposefully treat the Plaintiffs unequally compared to similarly situated residents of Poteet in violation of the equal protection clause. This discrimination is fueled by impermissible or racial purpose.

**Count 2 – Violation of the Texas Equal Rights Amendment**

87.Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88. The choice by City of Poteet to discriminate against Plaintiffs on the basis of creed violates the Texas' Equal Rights Amendment, which states "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. Art. I § 3a.

**Count 3 – Violation of the First Amendment**

89. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

90. The choice by City of Poteet to engage in retaliation against the Plaintiff because of Ms. Sanchez opposition to the City's leadership is a violation of the First Amendment to U.S. Constitution.

**Count 4 – Judicial Review Pursuant to Texas Local Government Code § 214.012**

91. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

92. Plaintiff seeks judicial review of the City of Poteet's illegal order to relocate, vacate, and demolish 749 Avenue E pursuant to this Court's supplemental jurisdiction of the state claims in this action. Specifically, Plaintiffs ask for a stay of the order issued by the municipal court and declaration that the house is habitable and meets the low requirements to avoid condemnation and demolition.

**Count 5 – Writ of Mandamus Invalidating Municipal Order**

93. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff seeks a Writ of Mandamus to invalidate the nugatory order of the municipal court denying the motion to stay execution based on the extraordinary circumstances of COVID-19. The municipal court's failure to observe the Governor and Texas Supreme Court's mandatory suspension of deadlines associated with court orders is an abuse of discretion and failure to act

within the bounds of municipal jurisdiction. In addition, the municipal court failed to follows its own adopted procedure. Writ should issue demanding that the City of Poteet stay the execution of its Court order, at least, until after the Governor's declaration of emergency ceases.

### Count 6 – Takings under U.S. and Texas Constitutions

95. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

96. The City of Poteet is seeking the destruction and confiscation of Plaintiffs property in violation of the U.S. and Texas Constitution. The U.S. Constitutional takings provision states "nor shall private property be taken for public use without just compensation." Fifth Amendment, U.S. Constitution. The City of Poteet is taking the Plaintiffs' property without just compensation. "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money." Tex. Const. Art. 1 § 17. The City of Poteet is or will damage Plaintiffs' property without compensation. The City has violated or will violate the takings clause of the U.S. and Texas Constitutions.

### VI.  Request for Injunctive Relief

97. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98. Plaintiffs will likely succeed on the merits, because the City of Poteet's order is illegal and its order denying the stay of the order is illegal. Plaintiffs will succeed on the merits because the home at 749 Avenue is safe and will be made safer. The Plaintiffs will succeed on the merits because the City is acting with an obvious impermissible purpose in the attempt to silence the Plaintiffs First Amendment Rights.

99. Plaintiffs will suffer immediate and irreparable injury if the City of Poteet is not enjoined from removing, relocating, vacating the residents of 749 Avenue E and, then, demolishing the property. Plaintiff Sanchez will be irreparable harmed because she will be removed from her home. The City will have successfully retaliated against her for exercising her First Amendment Right to question and expressively oppose her government. She will experience immediate irreparable injury because she will be made homeless in the middle of a dangerous pandemic that places her health at risk. Plaintiff Burgoyne will experience the injury of being removed from his home and facing serious injury or death associated with transmission of COVID-19. The estate of Rubin Leal faces the irreparable injury of property damage.

100. There is no harm to the City of Poteet, because there is no governmental need to enforce null orders. In addition, the relative safety of the home far exceeds the danger outside of the home during this pandemic. The worst case scenario for the City is that the order to remove, relocate and vacate would be executed after the pendency of the epidemic. The best case scenario for the City, it will become satisfied with the scope of work committed to the home and will not need to expend resources in demolishing the home.  The City can wait. The Plaintiffs cannot.

101. The injunction is in the public interest, because there is no public interest in the needless expenditure of dollars in demolishing a home that will be brought up to code in short order.

102. Plaintiffs have no other adequate, plain, or complete remedy at all other than enjoining the City of Poteet.

103. Plaintiffs request that the Court enter a temporary injunction and, then, a permanent injunction prohibiting Defendants the City of Poteet, *et al*., from taking any action to remove, relocate, or vacate the premises of 749 Avenue E, Poteet, Texas 78065.  In addition, the City and

its agents should be enjoined from destroying, razing, or damaging the property at 749 Avenue

E. Finally, the City of Poteet must lift its ban on Ms. Sanchez from being able to enter City Hall

in order that she be able to engage in municipal business.

## VII.    CONCLUSION AND REQUESTS FOR RELIEF

104. For the foregoing reasons, Plaintiffs respectfully request that Defendants be cited to

appear and answer and that the Court take the following actions and grant the following relief:

A. Appropriate preliminary and permanent injunctive relief to which Plaintiffs shows

themselves entitled;

B. Entry of a declaratory judgment as described above;

C. Attorneys' fees and court costs; and,

D. Any other or further relief, in law or equity that the Court determines that plaintiffs are

entitled to receive.

**DATED**: May 25, 2020                                    Respectfully,

By: /s/ *Martin Golando*

The Law Office of Martin Golando, PLLC
Texas Bar No. 24059153
405 N. St. Mary's, Suite 700
San Antonio, Texas 78205
Office: (210) 892-8543
Fax: (210) 405-6772
Email: martin.golando@gmail.com

Attorney for Plaintiffs

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

BEFORE ME, the undersigned authority, personally appeared Denise Leal Sanchez, who being duly sworn, deposed as follows:

"My name is Denise Leal Sanchez. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts as alleged in Plaintiffs' ORIGINAL COMPLAINT and each and every fact stated therein are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Denise Leal Sanchez_

Denise Leal Sanchez, Affiant and Plaintiff

SUBSCRIBED AND SWORN TO BEFORE ME on May 20th, 2020, by Denise Leal Sanchez.

_Jeremy Fernandez_

Notary Public, State of Texas

JEREMY FERNANDEZ
Notary Public-State of Texas
Notary ID #124066269
Commission Exp. JUNE 22, 2023

**AFFIDAVIT IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

BEFORE ME, the undersigned authority, personally appeared Stephen Burgoyne, who being duly sworn, deposed as follows:

    "My name is Stephen Burgoyne. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts as alleged in Plaintiffs' ORIGINAL COMPLAINT and each and every fact stated therein are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Stephen Burgoyne, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on May 24th, 2020, by Stephen Burgoyne.

Notary Public, State of Texas

JEREMY FERNANDEZ
Notary Public-State of Texas
Notary ID #124066269
Commission Exp. JUNE 22, 2023